# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRENDA CUDJOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-1068-D |
| | ) |
| WATERMARK VILLAS | ) |
| AT QUAIL NORTH, LLC, | ) |
| LINCOLN PROPERTY | ) |
| COMPANY, and certain | ) |
| unknown agents, servants, | ) |
| and employees, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Lincoln Property Company's ("Lincoln") Motion to Dismiss [Doc. No. 19] and Memorandum in Support [Doc. No. 20]. Defendant Watermark Villas at Quail North, LLC, ("Watermark Villas") adopts and incorporates by reference the argument and authority set forth in Lincoln's Memorandum. *See* Watermark Villas' Motion to Dismiss [Doc. No. 21]. Plaintiff has responded [Doc. NO. 22] and [Doc. No. 23]. Lincoln has replied [Doc. No. 28]. The matter is fully briefed and at issue.

## BACKGROUND[1]

The facts of the present case are fully set forth in the Court's Order [Doc. No. 16] and will only be restated here as they are relevant to the current Motions to Dismiss or

---

[1] In the background narrative, the Court has assumed the truthfulness of all well-pleaded facts in the Amended Complaint and draws all reasonable inferences therefrom in the light most favorable to Plaintiff. *Western Watersheds Project v. Michael*, 869 F.3d 1189, 1194 (10th Cir. 2017).

where they have been amended by Plaintiff's Amended Complaint. Plaintiff rented an apartment at The Reserve at Quail North ("The Reserve") in Oklahoma City, Oklahoma. After moving into her apartment, Plaintiff noticed a foul odor permeating throughout the home and complained to Val Eden, the business manager. Despite attempts by maintenance personnel to eliminate the smell, it returned and Plaintiff became ill. Plaintiff was forced to leave the apartment because of the smell and its effects on her health. Plaintiff repeated her complaint to management.

A few weeks later, Plaintiff visited the main office to inquire about the status of her apartment. Val Eden and Derrick Paratt, another employee, were present. Eden asked Plaintiff whether Paratt looked like a man and commented that he "has more damn boyfriends than we do." Paratt unzipped his shorts and Eden told him, "don't show me your 'itty.'" Paratt then placed his hand inside his shorts and moved it over his crotch. Plaintiff objected to Paratt's conduct and told him his actions could be viewed as sexual harassment. In response, Paratt stated that "it could be indecent exposure," and Eden replied, "just like when he's sticking out his weenie." Paratt then turned to Plaintiff and insisted he "tell [her] something about [his] penis." On another occasion during which Plaintiff was checking on her apartment issues, Paratt stated he would not be wearing any clothes when Eden came to pick him up for work. Paratt commented on another occasion that he was not attracted to women, although many wanted to have his baby. Plaintiff alleges this conduct was common in the business office.

Plaintiff subsequently filed the instant action asserting claims for: (1) violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*; (2) negligence, (3) invasion of

private right of occupancy; and, (4) intentional infliction of emotional distress ("IIED"). On October 13, 2017, Lincoln filed a Motion to Dismiss [Doc. No. 5] on the basis that Plaintiff had failed to: (1) allege the harassing behavior upon which she based her claim of violation of the FHA was based on her sex; and, (2) assert sufficient facts to establish she was the victim of conduct sufficiently outrageous and intolerable to support a claim for IIED. In the alternative, Lincoln moved to dismiss Plaintiff's claim for IIED because the alleged outrageous conduct by Eden and Paratt was committed outside the scope of their employment.

On April 20, 2018, the Court denied Lincoln's motion to dismiss as to Plaintiff's FHA claim and granted its motion as to Plaintiff's IIED claim but gave Plaintiff leave to file an Amended Complaint to correct the defects in that claim. Order [Doc. No. 16] at 10-11, 13. The Court agreed with Lincoln that Plaintiff had failed to allege a claim for IIED in which Lincoln would be liable under respondeat superior for the alleged conduct. *Id*. at 13.

Plaintiff timely filed her Amended Complaint [Doc. No. 18] on May 17, 2018, realleging all four claims and amending only her IIED claim. Relevant to the instant motion, Plaintiff contends Defendants violated the FHA by (1) subjecting her to a sexually hostile environment, (2) interfering with her enjoyment and exercise of rights under the statute, (3) failing to stop Eden and Paratt's sexually explicit behavior, and (4) committing discriminatory practices. *See* Amended Complaint at 6-8 [Doc. No. 18]. Plaintiff also contends "Defendants' extreme and outrageous conduct intentionally or recklessly caused severe emotional distress." *Id*. at 9-11.

3

Lincoln and Watermark Villas move to dismiss Plaintiff's claims for violation of the FHA and for IIED. Defendants again contend that: (1) Plaintiff has failed to allege that any harassing behavior violative of the FHA was based on her sex; and, (2) Plaintiff has failed to state a claim for IIED, as the alleged conduct occurred outside the course and scope of employment and was not subsequently ratified by Defendants.

**STANDARED OF DECISION**

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).[2] "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the

---

[2] Although Plaintiff's action was initiated in state court, the Federal Rules of Civil Procedure and the Supreme Court's standards in *Twombly*, *Iqbal*, and their progeny govern the sufficiency of her claims. *See* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); *McKnight v. Linn Operating, Inc.*, No. CIV-10-30-R, 2010 WL 9039794, at *1 (W.D. Okla. Apr. 1, 2010) ("Because the Federal Rules apply after removal, Rule 12(b)(6) and the attendant standards set by the Supreme Court apply. If, however, the Court concludes that Plaintiffs' allegations fail under the *Twombly* and *Iqbal* standard, it may order Plaintiffs to replead their claims if necessary."); *accord Lynch v. Jackson*, 478 F. App'x 631, 616 (11th Cir. 2012) (per curiam) ("Although the case has been removed to federal court and federal procedural rules apply, Plaintiff must still comply with federal pleading requirements.") (unpublished).

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679; *see Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (Stating that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context.") (internal quotation omitted). Therefore, *Iqbal* and *Twombly* provide "no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *also Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

The Tenth Circuit has held that the *Iqbal*/*Twombly* pleading standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Khalik*, 671 F.3d at 1191 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "Specific facts are not necessary," the pleader's allegations need only provide the "defendant fair notice of what the … claim is and the grounds upon which it rests." *Id*. at 1192 (quoting *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)) (internal quotations omitted). "*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192. Further, "the 12 (b)(6) standard does not require that [a p]laintiff establish a prima facie case." *Id*. at 1191. However, "the

5

elements of each alleged cause of action help to determine whether [the p]laintiff has set forth a plausible claim." *Id*. In ruling on a motion to dismiss a judge must accept all well-pled allegations as true, and "may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins*, 519 F.3d at 1247.

## DISCUSSION

I.     **Hostile Housing Environment[3]**

The FHA prohibits discrimination in housing on the basis of race, color, religion, sex, national origin, familial status, and disability. 42 U.S.C. §§ 3601 *et seq.* Housing and Urban Development ("HUD") regulations likewise prohibit "[q]uid pro quo and hostile environment harassment because of . . . sex." 24 C.F.R. § 100.600 (a)(2). HUD defines "hostile environment harassment" as "unwelcome conduct that is sufficiently severe or pervasive as to interfere with: [t]he availability, sale, rental, or use or enjoyment of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision or enjoyment of services or facilities in connection therewith; or the availability, terms, or conditions of a residential real estate-related transaction." 24 C.F.R. § 100.600 (a)(2)

---

[3] Plaintiff asserts that Defendants' Motion as it relates to her FHA claim amounts to an impermissible motion to reconsider the Court's Order denying their previous motion to dismiss the FHA claim on the same basis. However, the filing of Plaintiff's Amended Complaint "supersedes the original and renders it of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) (internal quotation omitted); *see Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1180-81 (10th Cir. 2015); *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007). The Amended Complaint requires a responsive pleading and Defendants are at liberty to file a new Rule 12 (b)(6) motion. Nevertheless, if the operative pleading and the arguments for dismissal are unchanged, the Court may rely on the grounds underlying its previous disposition, and does so in part here.

"[D]iscrimination may occur either by treating one gender less favorably (disparate treatment) or by sexual harassment." *Honce v. Vigil*, 1 F.3d 1085 (10th Cir. 1993). "Applied to housing, a claim is actionable when the offensive behavior unreasonably interferes with use and enjoyment of the premises." *Id*. at 1090. "Under the FHA, a person may be directly liable for '[f]ailing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it.'" *Metropolitan Fair Housing Council of Okla., Inc. v. Pelfrey*, No. CIV-15-1331-HE, 2017 WL 5495111, at *1 (W.D. Okla. Nov. 13, 2017) (quoting 24 C.F.R. § 100.7(a)(1)(ii)). "A person is vicariously liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law." *See id*. (quoting 24 C.F.R. § 100.7(b)).

In considering FHA claims, the Tenth Circuit looks to Title IIV cases for guidance on housing discrimination cases. *Honce*, 1 F.3d. at 1088. Thus, "[a] tenant seeking to state a hostile housing environment claim must allege: '(1) that he or she belongs to a protected group; (2) that the [tenant] has been subject to unwelcomed sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the [tenant]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of [the tenancy] and create a discriminatorily abusive [living] environment; and (5) a basis for holding the [lessor] liable." *See West v. DJ Mortgage, LLC*, 164 F. Supp. 3d 1393, 1393 n.1 (N.D. Ga.

2016) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)) (paraphrasing in original).

As to Plaintiff's FHA claim, Defendants raise only one of the arguments made in the previous motion to dismiss. That is, they contend that Plaintiff fails to allege sufficient facts to establish Eden and Paratt's behavior was directed at her because of her sex. Memorandum at 5-12. However, Defendants' Motion relies on cases in which the Tenth Circuit applied the heightened evidentiary standard reserved for summary judgment motions. Defendants cite *Riske v. King Soopers*, 366 F.3d 1085, 1092 (10th Cir. 2004) in which the Tenth Circuit found that the plaintiff's "**submitted evidence** . . . falls short" and *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1263 (10th Cir. 2005) in which the Tenth Circuit applied the "three ***evidentiary*** routes in which an inference of discrimination because of sex can be drawn" laid out in *Oncale v. Sundowner Offshore Servs.*, Inc., 523 U.S. 75, 79–80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Memorandum at 7-8, 8-11 (emphasis added). Such an examination of the record is inappropriate at the Rule 12(b)(6) stage.[4]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) (internal quotation omitted). Therefore, the issue at

---

[4] The only Tenth Circuit case applying the Rule 12 (b)(6) standard cited by Defendants simply states that the FHA claim was properly dismissed as "it does not allege that the State Defendants discriminated against her on the basis of race, color, religion, sex, familial status, or national origin." *White v. Ockey*, 241 Fed. Appx. 462, 466 (10th Cir. 2007). There is no discussion of the alleged facts in *White* or why any alleged facts fall short. Therefore, *White* provides no guidance to the Court on this issue.

this stage of the proceedings is not whether Plaintiff has presented sufficient evidence to succeed on her FHA claim but whether she has sufficiently **stated** a claim for hostile environment. *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

As it did in its previous Order denying Defendant Lincoln's motion to dismiss the FHA claim, the Court finds:

> Plaintiff has made a *minimal* showing of hostile housing environment. The [Amended] Complaint sufficiently sets forth instances of unwelcome sexual conduct, and its allegations contain sufficient factual content that allows the Court to draw the reasonable inference that such conduct and comments were based on Plaintiff's sex and, coupled with Defendant's failure to stop it, altered the terms and conditions of her tenancy as to create an abusive environment.

Order at 9-10. Construing all facts and reasonable inferences in the light most favorable to Plaintiff, Defendants' Motions to Dismiss must be denied as to Plaintiff's FHA claim.

## II. Intentional Infliction of Emotional Distress

Oklahoma recognizes intentional infliction of emotional distress as an independent tort. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1558 (10th Cir. 1995) (citing *Eddy v. Brown,* 715 P.2d 74, 76). The Tenth Circuit has identified four elements to an IIED claim:

> (1) the tortfeasor acted intentionally or recklessly; (2) the tortfeasor's conduct was extreme and outrageous; (3) the plaintiff actually experienced emotional distress; and (4) the emotional distress was severe.

*Starr*, 54 F.3d 1548, 1558 (10th Cir. 1995) (citing *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387 (10th Cir.1991); *see Computer Publications, Inc. v. Welton*, 2002 OK 50, ¶ 7, 49 P.3d 732, 735. "Liability for this tort does not extend to 'mere insults, indignities, threats, or occasional acts that are definitely inconsiderate and unkind.'" *Starr*, 54 F.3d at 1558 (quoting *Eddy v. Brown,* 715 P.2d 74, 77 (Okla.1986) (internal quotations

and paraphrasing omitted)). The tortfeasor's conduct must go "beyond all possible bounds of decency" or be "utterly intolerable in a civilized community." *Id*. (quoting *Eddy*, 715 P.2d at 77). "Nothing short of '[e]xtraordinary transgressions of the bounds of civility' will give rise to liability for intentional infliction of emotional distress." *Starr*, 54 F.3d at 1558 (quoting *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 432 (10th Cir.1990) (emphasis in original). However, the conduct must be considered "in the setting in which it occurred." *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986); *Young v. City of Idabel*, 721 Fed. Appx. 789, 805 (10th Cir. 2018) (citing *Eddy*, 715 P.2d at 77).

Defendants move to dismiss Plaintiff's IIED claim solely on the issue of respondeat superior. Defendant contends that Paratt and Eden's alleged conduct "occurred (if at all) outside of the former employees' course and scope of employment." Memorandum at 3, 12.[5] "[C]ourts have consistently found that the conduct involved in claims of assault, battery, and intentional infliction of emotional distress fall outside the scope of an employee's employment." *Johnson v. Indep. Sch. Dist. No. 3 of Oklahoma Cty., Oklahoma*, CIV-17-1058-M, 2018 WL 1732070, at *4 (W.D. Okla. Apr. 10, 2018); *Rodebush By & Through Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, 867 P.2d 1241, 1245 ("it is not within the scope of an employee's employment to commit an assault upon a third

---

[5] Defendants also briefly argue that Plaintiff's claim must fail as she "has not alleged any new facts to demonstrate that Lincoln ratified the alleged misconduct." Memorandum at 13. The Court need not address this contention as Plaintiff affirmatively states that she is not alleging Lincoln Property is liable "because [Paratt and Eden] remained employed after their tortious acts" and makes no assertions in her Objection or Amended Complaint that Defendants ratified Eden and Paratt's conduct. Instead, Plaintiff limits her argument to the contention that the alleged offending conduct naturally grew out of Eden and Paratt's performance of their employment duties.

person") (citing *Hill v. McQueen,* 204 Okl. 394, 230 P.2d 483, 485 (1951)). "[A]n assertion that an act is accomplished during an employment activity is insufficient to assess liability against the employer unless the act was done to accomplish the assigned work." *N.H. v. Presbyterian Church (U.S.A.)*, 1999 OK 88, ¶ 14, 998 P.2d 592, 599 (citing *Mistletoe Exp. Serv., Inc. v. Culp*, 1959 OK 250, 353 P.2d 9, 16).

There are three recognized exceptions to the general rule excluding intentional torts from the scope of employment:

> 1) the act is fairly and naturally incident to the employer's business; 2) the act occurs while the employee is engaged in an act for the employer; or 3) the assault arises from a natural impulse growing out of or incident to the attempt to complete the master's business.

*N.H. v. Presbyterian Church (U.S.A.)*, 1999 OK 88, ¶ 14, 998 P.2d 592, 598–99. Put another way, "[a]n employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer." *Rodebush By & Through Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, 867 P.2d 1241, 1245. "The question whether or not the act done is so different from the act authorized that it is not within the scope of the employment is decided by the court if the answer is clearly indicated; otherwise, it is decided by the jury." *Baker v. Saint Francis Hosp.*, 2005 OK 36, ¶ 16, 126 P.3d 602, 606-7, *as corrected* (June 1, 2005) (quoting *Nail v. City of Henryetta*, 1996 OK 12, 911 P.2d 914, 918 n. 12).

Plaintiff contends that Paratt and Eden's conduct satisfies the exceptions to the general rule because the conduct occurred "while [they] were attempting to perform their

duties, that is, tend to Plaintiff's apartment odors" and because "the acts resulted from some 'impulse of emotions which naturally grew out of or was incident to the attempt to perform the master's business.'" Objection at 5 (quoting *Rodebush*, 867 P.2d at 1245)). Plaintiff further asserts that the alleged sexual harassment "naturally grew out of or was incident" to Paratt and Eden's duties because it was "commonplace activity" in the business office. Objection at 5. The Court disagrees.

As stated in *N.H.*, "[n]o reasonable person would conclude that [] sexual misconduct was within the scope of employment or in furtherance of " Lincoln's business. *N.H.*, 998 P.2d at 599. A history of "commonplace" occurrences does not render this type of alleged misconduct any more necessary to the performance of apartment management and maintenance duties or any more likely to naturally result from an impulse of emotion related thereto. The allegations of the Amended Complaint in this regard do not allow the Court to draw a reasonable inference that Defendants are liable on the IIED claim.

Because Plaintiff has already amended once, and did not request leave to amend in his response brief, the Court finds that further amendment would be futile and Plaintiff's IIED claim will be dismissed with prejudice.[6]

---

[6] "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) (citing *Calderon v. Kansas Dep't of Soc. & Rehab. Svcs.*, 181 F.3d 1180, 1185-87 (10th Cir. 1999); *Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989)).

## CONCLUSION

Defendant Lincoln Property Company's Motion to Dismiss [Doc. No. 19] and Defendant Watermark Villas' Motion to Dismiss [Doc. No. 21] are **DENIED** in part and **GRANTED** in part as set forth herein.

**IT IS SO ORDERED** this 14th day of March 2019.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE