# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

BRENDA CUDJOE, )
)
        *Plaintiff*, )
v. ) Case No. CIV-17-1068-D
)
WATERMARK VILLAS AT QUAIL )
NORTH, LLC; LINCOLN PROPERTY )
COMPANY; and certain unknown agents, )
servants, and employees, )
        *Defendants*. )

**O R D E R**

Defendant Watermark Villas at Quail North, LLC, ("Defendant Watermark") and Defendant Lincoln Property Company ("Defendant Lincoln Property") bring before the Court their respective Motions for Summary Judgment [Doc. Nos. 56, 58]. Plaintiff Brenda Cudjoe has responded in opposition to both [Doc. Nos. 69, 70, respectively]. Defendant Lincoln Property has replied [Doc. Nos. 73], and Defendant Watermark's time to do so has elapsed. All matters are fully briefed and at issue.

**BACKGROUND[1]**

Defendant Watermark is the owner of an apartment complex in Oklahoma City called The Reserve at Quail North ("The Reserve"). Watermark's Motion [Doc. No. 56], at 1. Defendant Watermark appointed Thompson Thrift Development, Inc. ("Thompson Thrift"), as The Reserve's manager, and Thompson Thrift sub-contracted Defendant Lincoln Properties to manage the personnel necessary to operate The Reserve. *Id*. at 2.

---

[1] The facts set forth here, and in the Discussion section, *infra*, are undisputed unless otherwise noted.

Plaintiff notes that the scope of the contractual relationship between Defendants and Thompson Thrift remains in dispute. Response to Watermark [Doc. No. 69], at 13. During the time of the events at issue, Val Eden was the complex manager and Derrick Parratt was a leasing agent. Watermark's Motion at 2, 3.

## JURISDICTION

The Court has federal question jurisdiction over the present action based on a claim of hostile environment sexual harassment, in violation of the Fair Housing Act, 42 U.S.C. § 3601, et seq. ("FHA"). 28 U.S.C. § 1331. The claim is asserted against both Defendants, though both claims are predicated on the same set of facts. Plaintiff's remaining claims are state law claims.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 323; *Universal Underwriters Ins. Co. v. Winton*, 818 F. 3d 1103, 1105 (10th Cir. 2016). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," *Anderson*, 477 U.S. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Id.* at 251–52. Although the Court views all facts in the light most favorable to the nonmoving party at the summary judgment stage, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

## DISCUSSION

### I. Plaintiff has not set forth sufficient evidence that any harassment was severe or pervasive, and as such, summary judgment is granted on Plaintiff's FHA claims.

Both Defendants are alleged to have violated the FHA. There is some dispute as to what extent Defendants can be held vicariously liable for the actions of others under the FHA. Because the claims can be disposed of on other grounds, the Court does not, and need not, reach that issue.

On March 13, 2016, Plaintiff applied to live at The Reserve. Her application was accepted, and she moved in the next day. *Id.* at 2. Soon after her move, Plaintiff identified a foul odor, which she reported to Val Eden. *Id.* Maintenance personnel addressed the issue, though Plaintiff disputes the fact that the foul odor was ever eliminated. Response to Watermark at 6. It is undisputed, however, that the smell became an issue again on June 11, 2016. Watermark's Motion at 2. The extent to which Plaintiff subsequently reported the problem and management's response to her reports is disputed. *See* Response to Watermark at 7.

Sometime during the week of June 21, 2016, Plaintiff had visited the complex's leasing office to see Eden, who was not there. *Id.* at 4. Plaintiff was then subjected to

3

actions described as "filthy," "nasty," "unprofessional," and "offensive." *Id*. at 3. Plaintiff alone contends she was also the subject of "sexually explicit remarks and gestures." Response to Watermark at 8. On a separate occasion, Parratt began to unzip his pants in front of Plaintiff, put his hands in his shorts and moved his penis. Watermark's Motion at 4. The last event at issue took place on June 22, 2016. *Id*. Parratt turned to Plaintiff and said, while looking at Plaintiff, that he would not be wearing any clothes when he came to work. *Id*. at 5.

The FHA prohibits discrimination in housing on the basis of race, color, religion, sex, national origin, familial status, and disability. 42 U.S.C. §§ 3601 *et seq*. Housing and Urban Development ("HUD") regulations likewise prohibit "[q]uid pro quo and hostile environment harassment because of . . . sex." 24 C.F.R. § 100.600 (a)(2).

HUD defines "hostile environment harassment" as:

> unwelcome conduct that is sufficiently severe or pervasive as to interfere with: [t]he availability, sale, rental, or use or enjoyment of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision or enjoyment of services or facilities in connection therewith; or the availability, terms, or conditions of a residential real estate-related transaction.

24 C.F.R. § 100.600 (a)(2). Thus, a tenant seeking to state a hostile housing environment claim must allege the following:

> (1) that he or she belongs to a protected group; (2) that the [tenant] has been subject to unwelcomed sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the [tenant]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of [the tenancy] and create a discriminatorily abusive [living] environment; and (5) a basis for holding the [lessor] liable.

*See West v. DJ Mortgage*, LLC, 164 F. Supp. 3d 1393, 1393 n.1 (N.D. Ga. 2016) (quoting

*Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999)). "[D]iscrimination may occur either by treating one gender less favorably (disparate treatment) or by sexual harassment." *Honce v. Vigil*, 1 F.3d 1085 (10th Cir. 1993). "Applied to housing, a claim is actionable when the offensive behavior unreasonably interferes with use and enjoyment of the premises." *Id*. at 1090.

In considering FHA claims, particularly on housing discrimination cases, the Tenth Circuit looks to Title VII cases for guidance. *Id.* at 1088. For harassment to be actionable, it must be "sufficiently severe and pervasive," and it is insufficient for the harassment to be isolated or trivial. *Id.* at 1090; *see Faragher v. Boca Raton*, 524 U.S. 775, 787–88 (1998) (A claim must be judged "by looking at all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance."). Where only isolated incidents are alleged, the conduct must be egregious or extreme. *Morris v. City of Colorado Springs*, 666 F.3d 654, 667 (10th Cir. 2012).

In *Penry v. Federal Home Loan Bank of Topeka*, the Tenth Circuit affirmed a district court's grant of summary judgment on Title VII claims for sexual harassment and retaliation, requiring "severe and pervasive" conduct. 155 F.3d 1257, 1262–63 (10th Cir. 1998). The employees alleged that a supervisor made comments about wet dreams, mentioned exposed bra straps, talked about getting into an assistant's "drawers," and asked an employee what she was wearing under her dress. *Id*. at 1261. There were also four specific acts of unwanted physical contact. *Id*. The district court found, and the Tenth Circuit agreed, that this conduct was not severe or pervasive enough to survive summary

5

judgment. *Id*.

In *Rogers v. City County Health Department of Oklahoma City*, the Tenth Circuit reversed a district court's grant of summary judgment on a Title VII sexual harassment claim. 30 Fed. App'x 883, 887 (10th Cir. 2002). In that case, the plaintiff alleged she was sexually harassed on two separate occasions. *Id*. at 885. First, she was grabbed by the neck and forcibly kissed, with the defendant "pushing his tongue into her mouth." *Id*. The defendant, on a separate occasion, once again kissed plaintiff against her will and continued to kiss her even after she asked him to stop. *Id*. at 886. Notably, the defendant was the employer's highest ranking official. *Id*. at 887. The Tenth Circuit found this sufficient to "create a genuine issue of material fact for trial concerning whether plaintiff was subjected to a hostile work environment." *Id.; see Davis v. United States Postal Serv*., 142 F.3d 1334, 1337, 1341–42 (10th Cir.1998) (holding that incidents of unwelcome hugging and kissing and other physical contact by plaintiff's co-worker, one of which could be described as a physical assault, were sufficient to support a jury finding of a hostile work environment).

Plaintiff here introduces evidence of a smattering of offensive utterances, some aimed at her and some not, occurring over a few days within a single month. Parratt once stated "Brenda, I hate to do this to you," and proceeded to put his "butt in the air to Plaintiff's face, take[] his hand and pull[] a wedgy out the back of his butt and laugh[]." Response to Watermark [Doc. No. 15], Ex. 7, 131: 7-25; 132:1–12. Parratt made statements about his penis and, at some point, said to Eden: "hurry up and go [pee] because you don't want that stuff to dry up and you can't use it anymore." *Id*. at 149:19-25; 150–

6

57; 145: 11–15; 147: 11–13. "I won't be wearing any clothes tomorrow," Parratt also stated, while looking at Plaintiff. *Id*. at 144:1–25. It is undisputed that Parratt began to unzip his pants in front of Plaintiff, put his hands in his shorts and moved his penis. Watermark's Motion at 4. It is likewise undisputed that Parratt never touched, kissed, hugged, or exposed himself to Plaintiff. *See* Watermark's Motion [Doc. No. 56] at 5.

The facts here do not surpass than those in *Penry*, where the Tenth Circuit found a number of sexual and offensive comments coupled with physical contact to be insufficient to survive a motion for summary judgment. In fact, here, there was no physical contact made with Plaintiff at all. The facts are therefore distinctly unlike *Rogers*, where the defendant forced violent physical contact of a sexual nature on the plaintiff. 30 Fed. App'x at 887. Plaintiff has failed to establish a "long-lasting pattern of highly offensive behavior." *Honce*, 1 F.3d at 1090. Although boorish and crass, the isolated incidents alleged are neither egregious nor extreme. *See Morris,* 666 F.3d at 667.

Plaintiff urges the Court to consider that the facts here are like those in *Sholl v. Plattform Advertising, Inc.*, where a. district court found an issue of fact existed as to whether harassment was sufficiently severe or pervasive. 438 F.Supp.2d 1303 (D. Kan. 2006). In *Sholl*, a supervisor instructed the plaintiff and others to decorate a wig and wear it as a "merkin" in a parade around the office, told the plaintiff her work looked like a phallic symbol and induced others to make fun of her, played a radio comedy station which aired sexual language daily, used the term "bitch" daily to refer to women, discussed pornographic websites, made humiliating statements about female body parts, and told employees they would have "Titty Tuesday." *Id*. at 1313.

7

The harassment described by the district court in *Sholl*, and the Tenth Circuit precedent on which that court relied, was far more pervasive than the incidents the record herein describes. The *Sholl* court emphasized the fact that these comments were made *daily* and repeatedly. *Id*. A long-lasting pattern was established in *Sholl*, which plaintiff has failed to establish here.

There simply is not enough evidence of record—viewing it all in the light most favorable to Plaintiff—from which a reasonably jury could conclude actionable harassment took place. Because an element of Plaintiff's FHA claims against Defendants is not met, the claims fail as a matter of law.

**II.     The Court declines to exercise discretionary subject matter jurisdiction over the remaining state law claims and remands this action to state court.**

Having adjudicated Plaintiff's federal claims, the Court is left only with state law issues.

"When all federal claims have been [disposed of], the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del* City 660 F.3d 1228, 1248 (10th Cir. 2011). Where, after removal, a court disposes of all federal claims and only state law claims remain, it has "discretion either to remand the claims to the state court or to dismiss them" without prejudice. *Thompson v. City of Shawnee*, 464 F. App'x 720, 726 (10th Cir.2012) (citing *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 357 (1988)); *accord Rollins v. Okla. ex rel. Norman Veterans Ctr.*, No. CIV-12-921-D, 2013 WL 3992393, at *5 (W.D. Okla. Aug. 2, 2013).

The Court declines to exercise supplemental jurisdiction over the remaining state

law claims. The Court finds that remand is preferable to dismissal without prejudice.

**IT IS THEREFORE ORDERED** that Defendant Watermark Villa's Motion for Summary Judgment [Doc. No. 56] is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Defendant Lincoln Property's Motion for Summary Judgment [Doc. No. 58] is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that the action is remanded to the District Court of Oklahoma County, Oklahoma (original case number CJ-17-00620), for further proceedings on the remaining state law claims. The Clerk is directed to take the necessary action to effectuate remand.

**IT IS SO ORDERED** this 19th day of March, 2020.

TIMOTHY D. DeGIUSTI
Chief United States District Judge